DAVID J. BROWN (SBN 56628)
davidbrown@mbvlaw.com
MBV LAW LLP
855 Front Street
San Francisco, California 94111
Telephone:   415-781-4400
Facsimile:   415-989-5143

Attorneys for Defendants
John Shrimpton; TML Acquisition Ltd.;
Enterprise Investment Management Limited;
Vietnam Enterprise Investments Limited;
Dragon Capital Management Limited;
Tiberon Minerals PTE Ltd.; Vietnam Growth Fund
Limited; and Vietnam Dragon Fund Limited

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| TREVOR MOSS,<br><br>                     Plaintiff,<br><br>    v.<br><br>JOHN SHRIMPTON; , et al.,<br><br>                     Defendants. | CASE NO. CV-09-0109 SC<br><br>**DECLARATION OF JOHN SHRIMPTON IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**<br><br>Date:      January 8, 2010<br>Time:     10:00 a.m.<br>Place:    Courtroom 1, 17th floor<br>Judge:   The Honorable Samuel Conti |
|---|---|

I, John Shrimpton, declare:

1.   I co-founded Dragon Capital Group in 1994 and have been with it ever since. I have been involved with the Dragon Capital Group entities since each was formed and am familiar with their respective business activities, policies and practices. I have direct and specific personal knowledge of the facts set forth herein based on my activities on behalf of the defendants in my position as director of each of the entities, and I would testify competently to them if called upon to do so.

///

2. Tiberon Minerals, Ltd. ("Original Tiberon") was a Corporation -incorporated in Canada under the Canadian Business Corporations Act. It formed a joint venture known as Nui Phao Mining Joint Venture Company Ltd ("Nui Phao") (70% ownership interest) with two Vietnamese companies-each with a 15% ownership interest- being the other joint venture members. One of those other joint venture entities, the Thai Nguyen Import and Export Joint Stock Company, also known as Batimex Nui Phao, or Batimex, is 51% owned by the Thai Nguyen Provincial Government within the Country of Vietnam.

3. Nui Phao has been and continues to be a functioning company working to develop the mine in Thai Nguyen Province in Vietnam, which is the subject matter of the Nui Phao joint venture.

4. TML Acquisition Ltd. ("TML") was a British Columbia Corporation formed on or about January 3, 2007. After it acquired Original Tiberon, Original Tiberon continued (i.e. relocated) as a British Columbia Corporation-, and then merged with TML under British Columbia law (the two entities therefore becoming one entity). The merged entity was known as "Tiberon Minerals Limited". The acquisition of Original Tiberon by TML was effective March 30, 2007, and the merger occurred on September 1st, 2007.

5. Original Tiberon was independent from Dragon Capital Group entities and their personnel until March, 2007, although Vietnam Enterprise Investments Limited ("VEIL"), a Cayman Islands Corporation, Vietnam Dragon Fund Limited ("VDF"), a Bermuda Corporation, and Vietnam Growth Fund Limited ("VGF"), a Cayman Islands Corporation, (the "Dragon Funds") were shareholders prior to TML taking up and paying for all Original Tiberon's shares in February/March 2007. Original Tiberon was contractually bound by a Pre-Acquisition Agreement (governed by the laws of Ontario and the laws of Canada applicable therein) with VEIL, a Cayman Islands Corporation and other Dragon Capital Group parties as defined in that agreement, entered into on 18 December 2006, following a decision by the board to recommend any offer by TML.

6. I negotiated the Pre-Acquisition Agreement on behalf of VEIL and the other Dragon Capital Group entities involved. At the time the Pre-Acquisition Agreement was

negotiated and executed, I was not myself aware of Mr. Moss or his Consulting Agreement. The focus of the negotiations of the Pre-Acquisition agreement had nothing to do with any employment or consulting agreements per se and none were brought to my attention at that time. I was the only person at Dragon Capital that reviewed the Pre-Acquisition Agreement after it was drafted by the attorneys involved. So far as I considered Section 3.1 of that agreement, I assumed it to be standard boilerplate standstill language intended to keep the about to be acquired entity from materially changing its character or obligations prior to either closing the acquisition closing or some other event ending of the Pre-Acquisition Agreement. Clearly the provision was concerned with significant, material changes in the context of an acquisition in the region of 250,000,000 (US$) equivalent, not at decisions or transactions in the ordinary course of business-including those connected to employees or consultants (whom I note were covered in separate provisions). I neither understood nor intended on behalf of Dragon Capital by virtue of the Pre-Acquisition Agreement or otherwise to prevent anyone, including Mr. Moss, from being considered for, or paid, a bonus that would otherwise be due to him under his existing contractual arrangements with Nui Phao or Original Tiberon.

7. The above-mentioned negotiations regarding the Pre-Acquisition Agreement with Original Tiberon were conducted by me acting for the Dragon Capital Group entities. They occurred in Ho Chi Minh City in Vietnam, in Bangkok, Thailand and at various locations in and around Toronto, Canada. No one negotiating the agreement was in California.

8. The Dragon Capital Group entities involved would have purchased and acquired Original Tiberon without regard to where Mr. Moss or any other consultant being used by Nui Phao geographically lived, worked or otherwise interacted. At the time the Pre-Acquisition Agreement was negotiated and executed, details of contracts such as Mr. Moss' and including Mr. Moss' were not known to me personally, nor considered by me in reviewing and considering the agreement. Additionally, Section 3.1 of the Pre-

Acquisition Agreement was never considered or used by me or any Dragon Capital Group entity with respect to asking, directing or expecting Original Tiberon not to comply with Mr. Moss' Consulting Agreement, and no other action was taken by me or any Dragon Capital Group entity with respect to Mr. Moss' assertion to Original Tiberon's Compensation Committee and Board of Directors that he was entitled to a bonus on a pro-rated basis for his 2006 work under the Consulting Agreement.

9. I have been with Tiberon Minerals Pte. Ltd ("Tiberon Pte.") since its incorporation on January 3, 2007. In my capacity with the entity defendants in this action as a director of each, I am familiar with those defendants, and since the beginning of April 2007, the activities of Nui Phao Mining Joint Venture Company, Ltd.

10. Prior to the completion and closing of the acquisition of Original Tiberon, I did not in any fashion assume any management function or role with Original Tiberon as TML did not then have ownership of the company or any certainty whatsoever that ownership would be achieved. My only involvement was the negotiation and review of the Pre-Acquisition Agreement, and activities on behalf of the Dragon Group in making the acquisition. None of those activities involved giving any direction to how Original Tiberon handled bonuses of employees and consultants including Mr. Moss. The then existing President of Original Tiberon, Mario Caron, continued to manage the business so as to ensure a seamless transition as well as providing continuity, and he remained in that position until the end of August 2007, then departing at his own choice.

11. On the night of Friday 9th February, 2007, whilst I was visiting the United Kingdom, I learned that 93% of the Original Tiberon shareholders had approved a takeover of Original Tiberon by TML. I traveled to Toronto and arrived there on the night of February 13, 2007. On February 14, 2007, I went to Original Tiberon offices in Toronto and met with Mario Caron, his staff and some of Original Tiberon's then Directors. During the course of the day various people came in and out of a conference room to discuss many aspects of the acquisition. At that point, numerous formalities relating to the acquisition had yet to be completed, including TML paying for the Original Tiberon

shares that were tendered to it, and I sat in to learn more about Original Tiberon. Among those that came to the meeting room for a visit was Cliff Davis, an independent outside director of Original Tiberon. At some point as people came and left the conference room, Mr. Davis and Mr. Caron were having a discussion of Mr. Moss's bonus request. I am told I attended an Original Tiberon Compensation Committee meeting (among a large number of meetings), the next day. I have no recollection about the details of that meeting but know that at the time I was not participating in any way in management of Original Tiberon, and did not voice any opinion on the topic of Mr. Moss's bonus. Dragon Capital played no role in determining whether or not Mr. Moss was entitled to a bonus and did not play any role in the decision that was apparently made. I heard nothing more about Mr. Moss until August of 2007 when Mr. Caron (who as stated remained President and CEO of Original Tiberon and Nui Phao up until the end of August 2007) informed me that Mr. Moss had brought a claim against Tiberon because he was not awarded a bonus.

12. In short, I did not in any fashion suggest, direct or discuss that no bonus be awarded to Mr. Moss.

13. From my view and as the negotiating party for the Dragon Capital Group with respect to the Pre-Acquisition Agreement, the bonus consideration with respect to Mr. Moss by Original Tiberon's Compensation Committee was done in the ordinary course of business within the joint venture management function of Original Tiberon, as the de facto managing joint venture member and 70% owner of Nui Phao.

14. The Directors of Original Tiberon that considered Mr. Moss's bonus situation after the Compensation Committee acted did not contain any Dragon Capital Group personnel or designated persons. The Board in place when the Compensation Committee's decision was made, that Mr. Moss was not to receive a bonus for his 2006 work, was the Board in place prior to the effective date of the change in ownership of Original Tiberon. Dragon Capital Group appointees only joined the Original Tiberon board as at the end of March 2007 after completion of all acquisition formalities, including payment for the Original

Tiberon shares, the shares being delisted from the Toronto Stock Exchange and Original Tiberon's completion of its 2006 audited annual report.

15. Enterprise Investment Management Limited ("EIL") is a corporation formed in and pursuant to the laws of the Territory of the British Virgin Islands. A true and correct copy of its Certificate of Corporation is attached hereto as Exhibit A.

16. EIL has no material business activity in California, including without limitation:
   a. It has never owned property in California.
   b. It has never had any offices in California.
   c. It has never had any bank accounts in California.
   d. It has never had telephone service in California.
   e. None of its employees while employees of it have physically resided in California.
   f. In looking at and working to acquire an interest in Original Tiberon, it never negotiated with Original Tiberon in California or directed any of its respective negotiation activities toward California.
   g. It has never directed any communications to plaintiff except after it became aware of this lawsuit in 2009, and those communications were via its attorney with respect to this lawsuit.

I know this because as a Director of it, I am aware of its business activity and practices.

17. TML no longer exists. Prior to its merger with Original Tiberon, and thereafter, while it existed it had no activity in California, including without limitation:
   a. It has never conducted business in California.
   b. It has never owned property in California.
   c. It has never sent an agent or representative to California in order to conduct business on its behalf.
   d. It has never had any offices in California.
   e. It has never targeted its business directly toward California residents.
   f. It has never had any bank accounts in California.
   g. It has never had telephone service in California.

-6-

DECLARATION OF JOHN SHRIMPTON
CV-09-0109 SC

    h. None of its employees while employees of it have physically resided in California.

    i. In looking at and working to acquire an interest in Original Tiberon, it never negotiated with Original Tiberon in California or directed any of its respective negotiation activities toward California.

    j. It has never availed itself of the privileges of doing business in California.

    k. It has never directed any communications to plaintiff except after it became aware of this lawsuit in 2009, and those communications were via its attorney with respect to this lawsuit.

    l. It has never had continuous and systematic general business contact activity in, or with respect to, California.

I know this because as a Director of it, I was aware of its business activity and practices.

18. VEIL is a corporation formed and residing in the Cayman Islands. A true and correct copy of its Certificate of Corporation on Change of Name is attached hereto as Exhibit B.

19. VEIL has had no material activity in California, including without limitation:

    a. It has never owned property in California.

    b. It has never had any offices in California.

    c. It has never had any bank accounts in California.

    d. It has never had telephone service in California.

    e. None of its employees while employees of it have physically resided in California.

    f. It has never directed any communications to plaintiff except after it became aware of this lawsuit in 2009, and those communications were via its attorney with respect to this lawsuit.

    g. It has never had continuous and systematic general business contact activity in, or with respect to, California.

I know this because as a Director of it, I am aware of its business activity and practices.

20. Dragon Capital Management Limited ("DCM") is a corporation formed in the Territory of the British Virgin Islands. A true and correct copy of its Certificate of Corporation is attached hereto as Exhibit C.

21. DCM has had no activity in California, including without limitation:
    a. It has never owned property in California.
    b. It has never had any offices in California.
    c. It has never had any bank accounts in California.
    d. It has never had telephone service in California.
    e. None of its employees while employees of it have physically resided in California.
    f. It never negotiated with Original Tiberon in California or directed any of its respective negotiation activities toward California.
    g. It has never availed itself of the privileges of doing business in California.
    h. It has never directed any communications to plaintiff except after it became aware of this lawsuit in 2009, and those communications were via its attorney with respect to this lawsuit.

I know this because as a Director of it, I am aware of its business activity and practices.

22. Tiberon Pte. is a corporation formed and residing in Singapore. A true and correct copy of its Certificate Confirming Incorporation of a Company is attached hereto as Exhibit D.

23. Tiberon Pte. has had no activity in California, including without limitation:
    a. It has never conducted business in California.
    b. It has never owned property in California.
    c. It has never sent an agent or representative to California in order to conduct business on its behalf.
    d. It has never had any offices in California.
    e. It has never targeted its business directly toward California residents.
    f. It has never had any bank accounts in California.
    g. It has never had telephone service in California.
    h. None of its personnel while personnel of it have physically resided in California.
    i. In looking at and working to acquire an interest in Original Tiberon, it never negotiated with Original Tiberon in California or directed any of its respective negotiation activities toward California.

    j. It has never availed itself of the privileges of doing business in California.

    k. It has never directed any communications to plaintiff except after it became aware of this lawsuit in 2009, and those communications were via its attorney with respect to this lawsuit.

    l. It has never had continuous and systematic general business contact activity in, or with respect to, California.

I know this because as a Director of it, I am aware of its business activity and practices.

24. Tiberon Pte. by assignment of assets and assumption of liabilities assumed to the obligations of Original Tiberon and TML.

25. VGF is a corporation formed and residing in the Cayman Islands. A true and correct copy of its Certificate of Corporation is attached hereto as Exhibit E.

26. VGF has had no material activity in California, including without limitation:

    a. It has never owned property in California.

    b. It has never had any offices in California.

    c. It has never had any bank accounts in California.

    d. It has never had telephone service in California.

    e. None of its employees while employees of it have physically resided in California.

    f. In looking at and working to acquire an interest in Original Tiberon, it never negotiated with Original Tiberon in California or directed any of its respective negotiation activities toward California.

    g. It has never directed any communications to plaintiff except after it became aware of this lawsuit in 2009, and those communications were via its attorney with respect to this lawsuit.

    h. It has never had continuous and systematic general business contact activity in, or with respect to, California.

I know this because as a Director of it, I am aware of its business activity and practices.

27. VDF is a corporation formed and residing in Bermuda. A true and correct copy of its Certificate of Corporation is attached hereto as Exhibit F

28. VDF has had no material activity in California, including without limitation:
   a. It has never owned property in California.
   b. It has never had any offices in California.
   c. It has never had any bank accounts in California.
   d. It has never had telephone service in California.
   e. None of its employees while employees of it have physically resided in California.
   f. In looking at and working to acquire an interest in Original Tiberon, it never negotiated with Original Tiberon in California or directed any of its respective negotiation activities toward California.
   g. It has never availed itself of the privileges of doing business in California.
   h. It has never directed any communications to plaintiff except after it became aware of this lawsuit in 2009, and those communications were via its attorney with respect to this lawsuit.
   i. It has never had continuous and systematic general business contact activity in, or with respect to, California.

I know this because as a Director of it, I am aware of its business activity and practices.

29. I am not an agent or agent specially appointed to accept service of process of any of after Defendants.

30. I have had no activity in California, including without limitation:
   a. I have never conducted business in California on a personal basis,
   b. I have never owned property in California.
   c. I have never sent an agent or representative to California in order to conduct business on my own behalf.
   d. I have never had any offices in California.
   e. I have never had any bank accounts in California.
   f. I have never had telephone service in California.
   g. I have never had an employee in California.
   h. I have never availed myself of the privileges of doing business in California.

i. I have never directed any communications to plaintiff except after I became aware his lawsuit against Original Tiberon, and those communications were with respect to that lawsuit and this one.

j. I have never had continuous and systematic general business contact activity in, or with respect to, California.

31. TML, EIL, VEIL, DCM, Tiberon Pte., VGF, and VDF are not duly authorized officers, employees, servants, supervisors or agents of each other. EIL, VEIL, DCM, Tiberon Pte., VGF, and VDF are not supervisors of each other. TML Acquisition Ltd., VEIL, DCM, Tiberon Pte., VGF, and VDF are not employees of each other. TML Acquisition Ltd., EIL, VEIL, DCM, Tiberon Pte., VGF, and VDF are not agents of each other except that EIL manages VEIL and DCM manages VGF and VDF. TML, EIL, VEIL, DCM, Tiberon Pte., VGF, and VDF are not servants of each other. TML, EIL, VEIL, DCM, Tiberon Pte., VGF, and VDF are independent entities who have functioned as such in their activities. To the extent any of them did any activities alleged to have occurred in the Amended Complaint in this action, they were not done under the authority of other of the defendants except for investment management arrangements and TML as a subsidiary of the funds in this action or with the permission or consent of the other defendants in this action.

I declare and state under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 12, 2009 at Ho Chi Minh City, Vietnam.

_____
John Shrimpton

**TERRITORY OF THE BRITISH VIRGIN ISLANDS**

**THE INTERNATIONAL BUSINESS COMPANIES ACT (CAP.291)**

**CERTIFICATE OF INCORPORATION** (SECTIONS 14 AND 15)

No. 136307

The Registrar of Companies of the British Virgin Islands HEREBY CERTIFIES pursuant to the International Business Companies Act, Cap. 291 that all the requirements of the Act in respect of incorporation having been satisfied, **ENTERPRISE INVESTMENT MANAGEMENT LIMITED** is incorporated in the British Virgin Islands, as an International Business Company this 20th day of December, 1994.

Given under my hand and seal at Road Town, in the Territory of the British Virgin Islands

SGD: CALVIN A. EVERSLEY
REGISTRAR OF COMPANIES

CERTIFIED A TRUE COPY BY THE REGISTRAR OF COMPANIES:

DATE: 6-10-95

CI001c

**Exhibit A**

CR-59397

**Certificate of Incorporation On Change Of Name**

CERTIFIED TO BE A TRUE AND CORRECT COPY

I DO HEREBY CERTIFY that

**VIETNAM ENTERPRISE FUND LIMITED**

having by Special Resolution dated 12th of May 1995 changed its name, is now incorporated under the name of

**VIETNAM ENTERPRISE INVESTMENTS LIMITED.**

Given under my hand and Seal at George Town in the Island of Grand Cayman this Twenty-Second day of May One Thousand and Nine Hundred Ninety-Five

By: FORTIS FUND SERVICES (ASIA) LIMITED
As ASSISTANT SECRETARY

An Authorised Officer,
Registry of Companies,
Cayman Islands, B.W.I.

REGISTRAR OF COMPANIES · CAYMAN ISLANDS — EXEMPTED

TRUE COPY

**Exhibit B**

(Sections 14 and 15)

# TERRITORY OF THE BRITISH VIRGIN ISLANDS

## THE INTERNATIONAL BUSINESS COMPANIES ACT
### (CAP. 291)



### CERTIFICATE OF INCORPORATION

No. 136306

The Registrar of Companies of the British Virgin Islands HEREBY CERTIFIES pursuant to the International Business Companies Act, Cap. 291 that all the requirements of the Act in respect of incorporation having been satisfied,

**DRAGON CAPITAL MANAGEMENT LIMITED**

is incorporated in the British Virgin Islands as an International Business Company this 20th day of December, 1994

Given under my hand and seal at Road Town, Tortola in the Territory of the British Virgin Islands

CALVIN A. EVERSLEY, Esq.
REGISTRAR OF COMPANIES

**Exhibit C**

ACCOUNTING AND CORPORATE REGULATORY AUTHORITY (ACRA)



**Company No: 200700129C**

**CERTIFICATE CONFIRMING INCORPORATION OF COMPANY**

This is to confirm that **TIBERON MINERALS PTE. LTD.** is incorporated under the Companies Act (Cap 50), on and from 03/01/2007 and that the company is a PRIVATE COMPANY LIMITED BY SHARES.

**GIVEN UNDER MY HAND AND SEAL ON 05/01/2007.**

**CHUA SIEW YEN
ASSISTANT REGISTRAR
ACCOUNTING AND CORPORATE REGULATORY AUTHORITY (ACRA)
SINGAPORE**



<u>Exhibit D</u>



**Exhibit E**

Registration No. 37292



**BERMUDA**

## CERTIFICATE OF INCORPORATION

I hereby in accordance with section 14 of *the Companies Act 1981* issue this Certificate of Incorporation and do certify that on the **30th** day of **September, 2005**

### Vietnam Dragon Fund Limited

was registered by me in the Register maintained by me under the provisions of the said section and that the status of the said company is that of an **exempted** company.



Given under my hand and the Seal of the REGISTRAR OF COMPANIES this 4th day of **October, 2005**

for Registrar of Companies

**Exhibit F**